# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

SCOTLAND WILLIAMS, #276777,    *

Plaintiff,    *

v.    *    Civil Action No. ELH-18-363

STEPHEN MOYER,    *
DAYENA CORCORAN,
FRANK BISHOP,    *
MAILROOM STAFF DOE 1-10,
MAILROOM SUPERVISOR,    *
M. ROSE,
OFFICER KRUISE,    *
R. HAMMONS,
    *
Defendants.

\*\*\*

## MEMORANDUM OPINION

The self-represented plaintiff, Scotland Williams, an inmate incarcerated at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, brings this civil action pursuant to 42 U.S.C. § 1983 against a host of defendants: Stephen Moyer, Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS"); Dayena Corcoran, Commissioner of the Division of Correction ("DOC"); Warden Frank Bishop; Correctional Officer Robert Kruise Jr.[1]; Mailroom Staff Doe 1-10; Mailroom Supervisor; M. Rose; and R. Hammons, the librarian.[2] ECF 1. Williams alleges that defendants have violated his First Amendment and due process rights by improperly handling his mail at NBCI. *Id.* He seeks injunctive relief as well as compensatory and punitive damages. *Id.* at 29-30.

---

[1] The Clerk shall be directed to amend the docket to reflect Officer Kruise's full name.

[2] Service was not properly effectuated as to defendants' Mailroom Staff Doe 1-10, Mailroom Supervisor, M. Rose, and R. Hammons. As explained below, however, had these defendants been served, Williams' claims against them would nonetheless fail.

On June 4, 2018, defendants Moyer, Corcoran, Bishop, and Kruise moved to dismiss or, in the alternative, for summary judgment. ECF 12. The motion is supported by a memorandum of law (ECF 12-1) (collectively, the "Motion") and several exhibits. The Court granted plaintiff's requests for an extension of time in which to respond. ECF 15; ECF 16; ECF 19; ECF 21. In January 2019, Williams filed several responses in opposition. ECF 24-26; ECF 25; ECF 26. No reply was submitted.

Upon review of the record, exhibits, and applicable law, the court deems a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2018). Defendants' Motion, construed as a motion for summary judgment, shall be granted.

## I.       Plaintiff's Claims

Williams complains that while housed at NBCI, defendants have interfered with his legal and personal mail, in violation of his constitutional rights; the NBCI librarian has been negligent in managing her staff; and prison officials have failed to respond to his administrative remedy grievances regarding these issues. ECF 1.[3] Williams lists over 30 separate instances alleged to have taken place between 2010 and 2015 where mail he received from at least 13 different jurisdictions was "opened and inspected outside [his] presence." *Id.* at 6-14. Williams' Complaint cites six instances that occurred within three years of the date of filing of this lawsuit, where he claims his legal mail was opened and inspected outside of his presence, in violation of prison directives and State regulations regarding inmate mail. *Id.* at 5-6, 13.

In 2013, Williams filed two complaints in this court, pursuant to 42 U.S.C. § 1983. *Id.* at 17. But, he claims that both were dismissed because the court did not receive his responses in a timely manner. *Id.* With regard to the first case, Civil Action No. ELH-13-2561, Williams asserts

_____

[3] All citations reflect the electronic pagination.

that defendant Kruise confiscated his response to the opposing party's dispositive motion because Williams had written another inmate's name on the envelope instead of his own name. *Id.* at 17-18. And, according to Williams, this court dismissed the complaint on February 2, 2015, because it did not receive his response. *Id.* at 18. With regard to the second case, Civil Action No. ELH-13-2931, Williams maintains that defendant Rose returned Williams' response because he had exceeded the seven-letter limit. *Id.* Williams avers that this court dismissed that complaint because it did not receive his response in a timely manner. *Id.* at 19.

According to Williams, since June 19, 2013, NBCI has banned all greeting cards and has returned them to senders, unopened. *Id.* at 21-22. In addition, he alleges that since the Spring of 2016, defendants have confiscated as contraband any envelopes that contain confidential legal correspondence. *Id.* at 16. According to Williams, mailroom staff make a photocopy of the envelope, a correctional officer opens the legal mail in the inmate's presence, and the correctional officer delivers the contents and the photocopy but not the original envelope. *Id.* Williams complains that the photocopy does not show the date the mail was received. *Id.* at 16-17.

In addition, Williams alleges that defendant Hammons, the librarian at NBCI, is unable to manage or motivate her staff to respond to inmates' requests for legal information. *Id.* at 21. Williams claims that the library staff responds to requests sporadically or not at all, and they provide cases with incorrect citations. *Id.* Williams avers that, as a result, the library staff has severely prejudiced his access to the courts. *Id.*

And, Williams claims that he has informed defendants Moyer, Corcoran, and Bishop about these issues by using the Administrative Remedy Procedure ("ARP"). *Id.* at 19. Williams alleges that Corcoran and Bishop have failed to intervene and have refused to adequately address his grievances. *Id.* at 23-26.

## II.     Background

With the exception of legal mail, all incoming inmate mail is opened and inspected for prohibited contraband in the prison mail room prior to delivery to inmates.  Executive Directive OPS.250.0001.05(C)(1) and (3); ECF 12-2 at 4-5.  Except for legal mail, postage stamps, postage meter labels, address labels, or other items affixed to mail are removed before the mail is delivered to inmates.  OPS.250.0001.05(C)(7)(1).  *Id.* at 7.  Williams was considered "indigent" in March of 2015 and subject to a seven-letter per week limit unless he specifically requested additional postage and legal mail related materials, as required by OPS.250.0001.05(E)(1)-(5).  *Id.* at 8-9; *see also* ECF 5-1 at 17.

For incoming legal mail, a photocopy of the envelope is made, which is provided to the inmate, along with the contents, once the legal mail has been properly inspected and processed.  OPS.250.0001.05(C)(6)(a)-(d); ECF 12-2 at 6-7.  The Code of Maryland Regulations ("COMAR") provides, in relevant part, at 12.02.20.01B.(4):

> "Legal mail" means mail either addressed by an inmate to, or received on official stationery from, any of the following individuals or agencies:
>
> (a) A court;
> (b) A judge;
> (c) A clerk of court;
> (d) An attorney;
> (e) The American Civil Liberties Union;
> (f) The Legal Aid Bureau;
> (g) The Secretary of Public Safety and Correctional Services;
> (h) The Commissioner of Correction;
> (i) Director, Patuxent Institution; and
> (j) Elected or appointed public officials.

All incoming legal mail is recorded in the Legal Mail Logbook kept in the prison mailroom.  NBCI.250.0001.05(C)(4); *see* ECF 12-2 at 35.  From February to April and October of 2015, the months relevant to Williams' lawsuit, Williams had a total of 33 pieces of incoming legal mail that

was recorded in the NBCI Legal Mail Logbook, and for which he signed. *Id.* at 48-73; *see* ECF 12-1 at 5-6.

Once any legal mail and the photocopy of its envelope are delivered to an inmate, the original envelope is destroyed. OPS.250.0001.05(C)(6)(d); ECF 12-2 at 7. Defendants maintain that because legal mail is opened and inspected in the presence of the inmate and, as a result, is not subject to the same rigorous inspection process as regular mail, there is a greater potential for illegal contraband to enter the institution through legal mail. ECF 12-1 at 6.

Defendant Kruise declares that he has no recollection of receiving an envelope of legal documents from Williams in September of 2014 to be placed in the mailbox. *See* ECF 12-3, ¶ 3. When Kruise was assigned to the segregation tier where Williams was housed at that time, Kruise would pick up any outgoing mail from inmates at their cells; his duty assignment did not require him to inspect any inmate mail. *Id.* Therefore, Kruise denies that he confiscated Williams' mail and also denies that he told Williams he was confiscating the mail because Williams used another inmate's name on the envelope. *Id.*

Warden Bishop expects the NBCI staff to comply with the Executive Directives and NBCI Facility Directives regarding inmate mail and inmate grievances. See ECF 12-5, ¶ 3. When responding to an inmate's grievance, Warden Bishop relies on staff to review and prepare a response for his signature. *Id.* at ¶ 4.

While at NBCI from 2008 to 2018, Williams filed a total of 106 ARP complaints, which were all reviewed and responded to by NBCI staff. ECF 12-2 at 75-79. A search of the available records did not produce any record of the Inmate Grievance Office ("IGO") having received any relevant ARP appeal from Williams during the relevant time period. *See* ECF 12-4, ¶ 3.

### III.    Standard of Review

Defendant's Motion (ECF 12) is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.[4]  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Hous., LLC v. The City of Salisbury, Maryland*, 672 F. App'x. 220, 222 (4th Cir. 2016) (per curiam).  But, when the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5C

---

[4] In the Motion, defendants also cite Rule 12(b)(1).  ECF 12 at 1.  However, in the memorandum (ECF 12-1), they discuss the standard of review only under Rule 12(b)(6) and Rule 56.  *See id.* at 9-11.

WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

In general, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x. 632, 638 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional

discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 875 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 478 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods,* 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x. at 638; *Nader v.*

*Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the nonmoving party is proceeding pro se." *Putney*, 656 F. App'x. at 638.

Williams has not filed an affidavit under Rule 56(d), nor has he indicated that discovery is necessary. Moreover, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment, as this will facilitate resolution of the case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion: "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). And, the court must "view the evidence in the light most favorable to . . . the

nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Judd*, 718 F.3d at 313. On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"

*Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

## IV.    Discussion

As indicated, Williams claims that the defendants violated his First Amendment rights and deprived him of due process by improperly handling his mail. ECF 1. Specifically, he alleges that defendants opened his legal mail outside of his presence, redacted the dates from envelopes, and withheld incoming mail, such as greeting cards. *Id.* at 23-28. Williams also alleges that defendant Rose refused to send his outgoing mail, that defendant Kruise confiscated his outgoing mail, and that defendant Hammons, a librarian at NBCI, has been negligent in managing staff, thus hindering Williams' access to court. *Id.* at 25-27. Lastly, Williams claims that defendants Corcoran and Bishop have failed to intervene by refusing to process the ARP grievances Williams has filed regarding these issues. *Id.* at 23-26.

In their Motion, defendants argue that (1) they are entitled to qualified immunity; (2) defendants Moyer, Corcoran, and Bishop did not personally participate in the alleged wrongdoing and therefore cannot be liable; (3) Williams fails to establish a claim of lack of access to the court; (4) Williams suffered no injury related to his legal mail; (5) Williams' allegations regarding personal property do not state a constitutional claim; (6) Williams' claims are time-barred by the

11

statute of limitations; and (7) defendants are entitled to dismissal because Williams has failed to exhaust his administrative remedies. ECF 12-1.

In his response, Williams argues that (1) defendants are not entitled to qualified immunity; (2) defendants Moyer, Corcoran, and Bishop personally participated in the alleged wrongdoing; (3) defendants Mail Room Staff, Mail Room Supervisor, Rose, and Hammons do not deny the allegations; and (4) he took all steps necessary to exhaust administrative remedies. ECF 26 at 26-39.

## A. Statute of Limitations

There is no federal statute of limitations for actions under § 1983, and it is well-settled that the limitations period for § 1983 claims is determined by the analogous state law statute of limitations. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Burnett v. Grattan*, 468 U.S. 42, 49 (1984). In Maryland, the applicable statute of limitations is three years from the date of the occurrence. *See* Md. Code, § 5-101 of the Courts and Judicial Proceedings Article.

The three-year statute of limitations may be tolled for equitable reasons, but only in "those rare instances where - due to circumstances external to the party's own conduct - it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). Equitable tolling is unavailable to a plaintiff who has not been diligent in protecting his or her rights; rather, the plaintiff must establish that he or she has been prevented from asserting those rights. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 555 (1974). Under Maryland law, the statute of limitations is strictly construed. "Absent legislative creation of an exception to the statute of limitations," the courts do "not allow any 'implied and equitable

exception to be engrafted upon it.'" *Hecht v. Resolution Tr. Corp.*, 333 Md. 324, 333 (1994) (quoting *Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 653 (1985)).

Although the state statute of limitations applies, the question of when a cause of action has accrued under § 1983 is a federal question. *Nassim v. Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (citing *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975). The date of accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nassim*, 64 F.3d at 955 (citing *United States v. Kubrick*, 444 U.S. 111, 122-24 (1979)). Under the prison mailbox rule, an action under § 1983 is commenced for the purpose of meeting the statute of limitations when the complaint is delivered to prison staff for mailing and is no longer under the plaintiff's dominion and control. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Lewis v. Richmond City Police Dept.*, 947 F.2d 733, 736 (4th Cir. 1991).

Here, Williams describes over 30 incidents involving defendants' alleged mishandling of his mail dating from July 2010. ECF 1 at 7-22. The complaint, dated January 30, 2018, was filed in this court on February 5, 2018. *See id.* at 30. Thus, Williams' claims regarding events that took place before January 30, 2015, including defendant Kruise's alleged confiscation of Williams' outgoing mail, are time-barred and must be dismissed.

**B. Exhaustion**

Defendants raise the affirmative defense that Williams has failed to exhaust his administrative remedies. If Williams' claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section
> 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

> prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. App'x. 253 (4th Cir. 2004).[5]

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See*

---

[5] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id*. at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id*., nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Corr. Med. Servs., Inc*., 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," Md. Code, Corr. Servs. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

*Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence and provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (citations omitted). A claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, ____ U.S. ____, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000)) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion").

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Chase*, 286 F. Supp. at 530; *see Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of

prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88, 93. This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with

16

the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

More recently, in *Ross v. Blake*, ____ U.S. ___, 136 S.Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id*. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. And, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore,* 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

The Maryland Department of Public Safety and Correctional Services has an established ARP for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code (2017 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq*.; COMAR 12.07.01.01B(1)

(defining ARP); OPS.185.0002.02.[6]  The grievance procedure applies to the submission of a "grievance against an official or employee of the Division of Correction . . . ."  C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance to include a "complaint of any individual in the custody of the Department of Correction [("DOC")] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement."  COMAR 12.07.01.01B(8).  An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance.  *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; OPS.185.0002.02.

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee.  C.S. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO.  *Id.* § 10-206(b); *see also* OPS.185.0002.02.  A grievance must be filed in writing, in a format approved by the IGO, or by use of an ARP form.  COMAR 12.07.01.04(A). And, the grievance must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A.

---

[6] OPS.185.0002 is an Executive Directive created by DPSCS, titled "Administrative Remedy Procedure (ARP)" ("ARP Directive") available for review at http://itcd.dpscs.state.md.us/PIA.  "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see also* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" OPS.185.0002.05C(1). In C.S. § 1-101(k), a "Managing official" is defined "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DPSCS, each facility's warden is responsible for the ARP at the institutional level. OPS.185.0002.05E. Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. OPS.185.0002.05J.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. The prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operations or that official's designee. OPS.185.0002.05L. For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. *Id.*

If the Commissioner of DOC denies an appeal, the prisoner has 30 days to file a grievance with the IGO. OPS.185.0002.05D; C.S. § 10-206(a); COMAR 12.07.01.05B. When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss, it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.

An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08. The conduct of such

hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07D; *see also* Md. Code (2014 Repl. Vol.), State Gov't, §§ 10-101 *et seq.*

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A. However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in a Maryland circuit court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Williams failed to exhaust his administrative remedies regarding the claims asserted here. To the extent Williams raised claims in the ARP process sufficiently similar to those asserted in this Complaint, he did not fully exhaust the remedies available to him before filing the instant case. Williams claims that he appealed to the IGO numerous times after the Commissioner and the Warden failed to respond to his ARPs. ECF 5-1 at 11, 15, 20, 26, 30, 33. For support, he attaches appeal forms directed to the IGO that state the reasons for the appeal. *See id.* None of the forms Williams attached, however, are marked as having been received by the IGO. *See id.* Moreover, defendants show, through the Declaration of Samiyah Hassan (ECF 12-4), an employee at the IGO, that a search was conducted for ARP appeals filed by Williams with the IGO, and they maintain

that it reveals that Williams did not file any relevant ARP appeals during the time period in question. ECF 12-4.

As discussed above, the PLRA requires that inmates exhaust **all** available remedies properly. The IGO process was available to Williams but it appears that he did not pursue it properly. Williams' unsupported and unverified statements concerning his efforts before the IGO are insufficient to refute defendants' evidence that he failed to exhaust his administrative remedies. Thus, Williams' claims are subject to dismissal for failure to exhaust.

Even if Williams had exhausted, his claims, as outlined below, would fail.

**C. Failure to State Claim**

To bring a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish the violation of a constitutional right or federal law. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979). Here, Williams claims that defendant Hammons hindered his access to the courts and that defendants violated his First Amendment and due process rights by withholding incoming greeting cards. ECF 1 at 27-28.

*1. Access to Courts*

Prisoners have a constitutionally protected right of access to the courts. *See Bounds v. Smith*, 430 U. S. 817, 821 (1977). However, in *Lewis v. Casey*, 518 U. S. 343, 355 (1996), the Supreme Court said:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.
>
> "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of

access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F. 3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 399.

In *Christopher v. Harbury*, 536 U.S. 403, 403 (2002), the Court characterized access-to-the courts claims as being in one of two categories. *Id* at 413-14. The first, termed "forward looking claims," are cases where official action frustrates a plaintiff's ability to bring a suit at the present time. *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208-09 (10th Cir. 2004). The second class, termed "backward looking claims," arises when a plaintiff alleges that a specific claim "cannot be tried (or tried with all the evidence) [because past official action] caused the loss or inadequate settlement of a meritorious case." *Id*. at 1209. In this way, the official action is said to have "'rendered hollow [the plaintiff's] right to seek redress'" in the courts. *Id*. (quoting *Christopher*, 536 U.S. at 415 (brackets in original) (internal citations omitted)).

Whether the claim is forward or backward looking, a prisoner claiming he was denied access to the courts must ultimately prove he suffered an actual injury by showing that the defendant's acts hindered his ability to pursue a nonfrivolous legal claim. Conclusory allegations are not sufficient in this regard. *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal).

The right of access to the courts is "ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415. "[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.* at 416 (footnote omitted). A prisoner's right to access the courts does not include the right to present frivolous claims. *Lewis*, 518 U.S. at 353 n.3.

Williams' access to courts claim consists of his allegation that defendant Hammons' library staff lacks legal education and training, and are unable to respond to requests for legal information. ECF 1 at 21. Absent from Williams' pleadings filed in this case is any indication as to how Hammons' alleged actions adversely impacted a viable claim. As there is no discernible injury suffered by Williams, his constitutional right of access to the courts remains intact.

### 2. *Greeting Cards*

To the extent Williams is claiming that his First and Fourteenth Amendment rights were violated when defendants withheld incoming greeting cards, his claim is unavailing. At most, his claim is one of lost or stolen property. In such cases, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 540 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The Supreme Court's holding also applies to intentional deprivations of property. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post-deprivation remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[7]

---

[7] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker*'s reliance on

Here, Williams filed an ARP regarding the withholding of incoming greeting cards. *See* ECF 5-1 at 31. It is unclear whether the Warden responded to Williams' grievance or whether Williams appealed to the Commissioner of Correction. But, as stated above, defendants maintain that Williams did not appeal to the IGO. *See id.*; ECF 12-4. Regardless of whether Williams availed himself of the opportunity to do so, he is nonetheless afforded sufficient due process by the availability of a remedy.

### D. Supervisory Liability

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985). The State of Maryland has not waived such immunity for claims brought pursuant to § 1983. Accordingly, defendants Moyer and Corcoran are immune from suit for actions taken in their official capacities.

As to actions taken in their individual capacities, the Complaint does not allege any individual acts or omissions taken by Moyer or Corcoran. Nor can they be held liable simply because they occupied supervisory positions; the doctrine of respondeat superior does not apply to § 1983 claims. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *see also Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).

A supervisory official cannot be held liable for the acts of a subordinate unless the supervisor's "indifference or tacit authorization of subordinates' misconduct" can be deemed to

---

*Parratt* in dismissing the plaintiff's due process claim.

have caused the injury to the plaintiff. *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). For a supervisor to be found liable for such acts, a plaintiff must prove that (1) the supervisor has actual or constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the subordinate's misconduct; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Id.*; *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Williams has not shown that his constitutional rights were violated. In addition, his assertions do not demonstrate any pattern of widespread abuse necessary to establish supervisory action or inaction giving rise to § 1983 liability. *See Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (stating that "[g]enerally, a failure to supervise gives rise to § 1983 liability, however, only in those situations in which there is a history of widespread abuse").

At best, the Complaint and evidence establish that NBCI has policies in place to prevent the inmates' use of the mail system to bring illegal contraband into the institution. *See* ECF 12-2 at 2-13. Adhering to the mail room procedures does not amount to participation in the alleged constitutional violation sufficient to confer liability. Nor has Williams put forward any evidence that defendants are liable pursuant to *Monell v. Dep't of Soc. Servs. of the City of New York*, for unconstitutional actions taken pursuant to an official policy, custom, or practice. 436 U.S. 658, 690-91 (1978).

To the extent Williams claims that defendants violated their own policy, such a claim does not rise to a constitutional violation. The adoption of procedural guidelines does not give rise to a

liberty interest. Thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987); *accord Kitchen v. Ickes*, 116 F. Supp. 3d 613, 629 (D. Md. 2015), *aff'd*, 644 F. App'x 243 (4th Cir. 2016). Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *accord Kitchen*, 116 F. Supp. 3d at 629 n.6.

Accordingly, viewing the facts as pleaded most favorably to Williams, I shall grant summary judgment in favor of defendants.[8]

### V. Conclusion

For the reasons set forth above, there is no genuine issue as to any material fact and defendants are entitled to a judgment as a matter of law. Summary judgment shall be entered in favor of defendants by separate Order.


March 6, 2019                                             _____/s/_____
Date                                                        Ellen L. Hollander
                                                            United States District Judge

---

[8] In light of the court's ruling, an analysis of the parties' remaining arguments is not necessary.